UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMIL J. SANTOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2761 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MARK C. CURRAN, JR., SHERIFF, LAKE COUNTY, in his individual and official capacity; JENNIFER WITTHERSPOON, in her individual capacity, and JANE DOE, in her individual capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT OFFICER EASTERDAY, in his individual capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT OFFICER BILBO, in his individual capacity, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# OPINION AND ORDER

Plaintiff Emil J. Santos challenges his detention in the Lake County Jail before his transfer to Immigration and Customs Enforcement ("ICE") custody even though a judge ordered his release and his sister paid his bond. Santos initially filed this suit seeking a writ of habeas corpus, but after his transfer to ICE custody, he filed an amended complaint alleging that he was wrongfully detained from the time of his arrest to the time of his transfer and that he was transferred in retaliation for filing this action. He names as Defendants Mark C. Curran, Jr., the Sheriff of Lake County, in both his individual and official capacity; Jennifer Witherspoon, in her individual capacity; Jane Doe, in her individual capacity (collectively, the Lake County Defendants); ICE Officer Easterday, in his individual capacity; and ICE Officer Bilbo, in his individual capacity. The Lake County Defendants have moved to dismiss Santos' amended

complaint.[1] The Court cannot determine at this stage whether the Lake County Defendants had a valid reason to detain Santos beyond the time his sister posted bail based on the facts in the amended complaint and the immigration detainer, the only additional document the Court finds appropriate to consider in evaluating the Lake County Defendants' motion to dismiss. Under these alleged facts, the Court does not find that *Heck v. Humphrey* prevents Santos from pursuing his claims or that qualified immunity protects the Lake County Defendants from those claims. The Court further concludes that Santos has adequately pleaded both his wrongful detention and retaliation claims, except that it dismisses the retaliation claim against Jane Doe because he has not alleged a basis to hold her personally responsible on that claim.

## BACKGROUND[2]

Santos, born in Honduras, lived in Fox Lake, Illinois, located in Lake County, when Fox Lake police arrested him on April 1, 2017. Officers detained him at the Lake County Adult Corrections Facility (the "Lake County Jail") and charged him with domestic battery and interfering with a domestic violence report. That day, a judge ordered him released upon the payment of a $20,000 bond. Santos' sister went to the Lake County Jail and paid the bond. Jane Doe, a Lake County Jail officer working at the desk, told Santos' sister to return in three hours, indicating it would take that long to process Santos' release. But before Santos' sister could return to the Lake County Jail, she received a call from Jane Doe, who stated that Santos would not be released because of an ICE detainer and that the sister should return to reclaim the money.

---

[1] Although counsel has appeared for the ICE officers, the ICE officers have not filed a motion to dismiss or an answer to the amended complaint despite the fact that their time to answer has passed.

[2] The facts in the background section are taken from Santos' amended complaint and are presumed true for the purpose of resolving the Lake County Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

2

Santos' sister returned to the Lake County Jail and received a refund of the amount she had posted as bail.

Santos did not receive a notice to appear in immigration court from any federal immigration agency and ICE officials did not take Santos into custody. Instead, Santos remained in Lake County custody until April 13, 2017. On April 11, Santos filed the instant case, seeking a writ of habeas corpus. On April 12, in the afternoon, Santos' counsel faxed a copy of the complaint and petition for writ of habeas corpus to Witherspoon, the legal liaison for the Lake County Sheriff's Office. Counsel also called Witherspoon at the Lake County Sheriff's Office Legal Affairs Department. That evening, a Lake County Jail officer told Santos to have his family pay the bond, indicating that although immigration authorities would likely arrest him, he should nonetheless pay the bond. Santos' sister did so around 8:00 p.m. that evening. But Lake County officials did not release Santos after his bond had been paid. Instead, they communicated to ICE officials that Santos had filed a complaint challenging his detention. This prompted Santos' transfer to ICE custody on April 13, when Bilbo or Easterday took Santos from the Lake County Jail to an immigration processing facility in Chicago, Illinois. One of them told Santos that despite a lawsuit being filed on his behalf, they "got him" anyway. Doc. 6 ¶ 36. ICE then transferred Santos to the Dodge County Detention Facility in Dodge County, Wisconsin.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in

the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Validity of the Detention

The Lake County Defendants first argue that Santos' wrongful detention and retaliatory discharge claims fail because he was the subject of an ICE warrant for arrest and immediate deportation, meaning that his detention was lawful at all times and he cannot establish any retaliation. The Lake County Defendants rely on certain documents not attached to Santos' amended complaint as the underlying basis for their argument. Specifically, the Lake County Defendants attach a warrant of removal/deportation issued by ICE along with an immigration detainer on DHS Form I-247A both dated April 1, 2017. Doc. 12 at 16–17. The warrant of removal, signed by a field office director and addressed to "any immigration officer of the United States Department of Homeland Security," indicates that Santos is subject to removal from the United States based on a final order pursuant to Section 241(a)(5) of the Immigration and Nationality Act ("INA") and directs the immigration officer to take Santos into custody and remove him from the United States.[3] Doc. 12 at 16. The immigration detainer, issued

---

[3] Section 241(a)(5), codified at 8 U.S.C. § 1231(a)(5), provides that if an alien has reentered the United States illegally after having been removed under an order of removal, the prior order of removal is reinstated, it cannot be reopened or reviewed, and the alien shall be removed under the prior order at any time after reentry.

specifically to the Lake County Jail, states that the Department of Homeland Security ("DHS") has determined through biometric confirmation that Santos lacks immigration status or otherwise is removable under U.S. immigration law and requests that the Lake County Jail notify DHS as early as practicable before Santos is released from custody and maintain custody of him "for a period **NOT TO EXCEED 48 HOURS** beyond the time when he[ ] would otherwise have been released from [its] custody to allow DHS to assume custody." *Id.* at 17. It further states that Santos "must be served with a copy of this form for the detainer to take effect." *Id.* The Lake County Defendants also attach a notice and order of expedited removal dated August 25, 2006, finding Santos inadmissible to the United States under Section 212(a)(7)(A)(i)(I) of the INA and ordering him removed from the United States pursuant to INA Section 235.[4] *Id.* at 18–19.

Neither side explains why the Court may consider the documents the Lake County Defendants have attached to their response at the motion to dismiss stage. The Court may consider documents that are referenced in a complaint and central to a plaintiff's claims without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Santos alleges that Jane Doe told his sister that he would not be released because of an ICE detainer, which at least allows the Court to consider the one-page detainer. But Santos' amended complaint says nothing about an arrest warrant or any other documents that accompanied the detainer, such as the 2006 notice and order of removal. The Lake County Defendants state that ICE sent the warrant to the Lake County Jail, but the Court cannot consider such a factual statement by a defendant accompanying the document on a

---

[4] INA Section 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), provides that an alien is ineligible to be admitted to the United States if he or she is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. Section 235(b)(1) (8 U.S.C. § 1225(b)(1)) provides that if an immigration officer determines that an alien is inadmissible under Section 212(a)(7), the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates an intention to apply for asylum.

5

motion to dismiss where it is not clear from the documents that the Lake County Jail received the warrant or the notice of removal at the time of Santos' detention.  Because factual questions surround these additional documents and Santos does not refer to them in his amended complaint, the Court does not consider them at this stage.

The Court, therefore, must defer until summary judgment the Lake County Defendants' main argument for dismissal—that Santos was being held not on a detainer but rather a warrant because he had committed the criminal immigration violation of illegal reentry, meaning that his detention was mandatory.  The immigration detainer itself does not indicate that Santos had previously entered the country illegally or state that the Lake County Jail was required to hold him despite his sister having posted his bond.[5]  *See Galarza v. Szalczyk*, 745 F.3d 634, 642 (3d Cir. 2014) (reviewing the INA and ICE's position on detainers to conclude that "detainers are not mandatory").  Instead, the detainer only "request[s]" that the Lake County Jail "[m]aintain custody of [Santos] for a period **NOT TO EXCEED 48 HOURS** beyond the time when he[ ] would otherwise have been released from [its] custody to allow DHS to assume custody."  Doc. 12 at 17.  This suggests that Santos' detention in Lake County Jail after his sister posted bond on April 1 until his transfer to ICE custody on April 13 was wrongful.  *See Galarza*, 745 F.3d at 643, 645 (because immigration detainer is not mandatory, it cannot be used as a defense to a wrongful detention, finding that "immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government"); *Villars v. Kubiatowski*, 45 F. Supp. 3d 791, 806–08 (N.D. Ill. 2014) (rejecting Lake County Defendants' argument that jail officials could detain plaintiff pursuant to ICE detainer despite plaintiff having

---

[5] Indeed, the immigration detainer form provides several options for DHS to specify why it believes probable cause exists that the subject is a removable alien.  Doc. 12 at 17.  One of those options is that a "final order of removal against the alien" exists.  *Id.*  But DHS did not choose that option with respect to Santos, instead indicating that probable cause existed based on biometric confirmation of his identity and a records check of federal databases indicating that he did not have immigration status.  *Id.*

posted bond at the motion to dismiss stage where plaintiff alleged that Lake County did not have probable cause that plaintiff violated federal criminal law). Therefore, the Court does not further address the Lake County Defendants' arguments that Santos cannot pursue his claims because they were required to detain Santos pursuant to a warrant for removal and could not release him on bond despite the state court judge's order. The Court instead proceeds to address the Lake County Defendants' remaining arguments for dismissal, with the Lake County Defendants free to reassert their arguments concerning the validity of Santos' detainer pursuant to the ICE warrant at a later date.

## II. *Heck v. Humphrey* Bar

The Lake County Defendants alternatively argue that *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), bars Santos' claims. Under *Heck*, a criminal defendant may not use § 1983 to claim damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless that conviction or sentence had been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. § 1983 is the not the appropriate vehicle for criminal defendants to collaterally attack an otherwise valid criminal conviction. *Id.* at 486. The Lake County Defendants argue that although this case does not involve a conviction, *Heck* similarly applies to bar claims that would invalidate an immigration detention. *See Cohen v. Clemens*, 321 F. App'x 739, 742 (10th Cir. 2009) (applying *Heck* to bar plaintiff's *Bivens* claim challenging his civil immigration detention because, in order to receive damages, he would have to prove that his detention was unlawful); *Daniel v. United States*, No. 4:14-cv-00443-AKK-TMP, 2015 WL 1334029, at *3–4 (N.D. Ala. Mar. 24, 2015) (under *Heck*, plaintiff would only

have a claim for damages caused by his immigration detention when a court invalidated that detention).

Santos responds that *Heck* does not apply in this situation because he is not challenging ICE's authority to detain him but rather the Lake County Defendants' authority, as a local law enforcement agency, to hold him pursuant to the detainer after he had posted bond. According to Santos, such a claim does not require him to demonstrate the invalidity of his federal detention. The difference in the parties' characterization of the issue again centers on whether Santos' detention is one for a civil or a criminal immigration violation, but the Court must treat it as a civil one based on the pleadings and the face of the immigration detainer. At this stage, then, the Court cannot find *Heck* bars Santos' claim, particularly in light of the Seventh Circuit's instructions that *Heck* does not bar a suit where a plaintiff cannot pursue a habeas action or other collateral relief so as to satisfy *Heck*'s favorable termination requirement and where Santos did attempt to challenge his detention at the Lake County Jail by way of a habeas action, only to have that action mooted when officials transferred him to ICE custody. *See Burd v. Sessler*, 702 F.3d 429, 435 (7th Cir. 2012) ("We have held that, where a plaintiff cannot obtain collateral relief to satisfy *Heck*'s favorable termination requirement, his action may proceed under § 1983 without running afoul of *Heck*."). Under Santos' version of facts, which the Court must accept as true here, his claims against the Lake County Defendants do not imply the invalidity of his federal detention but rather only challenge whether his detention at the Lake County Jail violated his constitutional rights. Therefore, the Court does not find that *Heck* bars his claims at this time.

### III.   Qualified Immunity

Next, the Lake County Defendants argue that qualified immunity protects them from Santos' claims. "Qualified immunity attaches when an official's conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted).

The Lake County Defendants argue that, although admittedly a person cannot be held without a probable cause determination or a warrant, because Santos had a final order of removal and courts cannot review detention transfers or placements, he cannot show a constitutional violation occurred with respect to either of his claims. But this ignores Santos' version of facts, which the Court must take as true in deciding the motion to dismiss. Considering those facts only and treating the immigration detainer as a civil one, Santos has sufficiently stated a claim for wrongful detention, at least to the extent that the Lake County Defendants kept him for over forty-eight hours after his sister posted bond. *See Galarza*, 745 F.3d at 643, 645; *Villars*, 45 F. Supp. 3d at 806–08. Similarly, Santos' allegations that the Lake County Defendants took almost immediate action after learning of the filing of his suit to transfer him to ICE custody, including telling him to have his family pay the bond again, not release him, and then transfer him to ICE custody, even though they had received the ICE detainer eleven days prior, at least gives rise to an inference of retaliation at this stage. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (to state a First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a

9

motivating factor in the Defendants' decision to take the retaliatory action." (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009))). The Lake County Defendants argue further that, even if a constitutional violation occurred, no clearly established guidelines or rules governed the procedures or appropriate length of detention prior to transfer. But again treating this as a civil immigration detainer, as the Court must in light of Santos' pleading, federal regulations clearly set forth that the detention should have lasted no more than forty-eight hours beyond the time Santos would have been released in order to permit ICE to assume custody of Santos. *See* 8 C.F.R. § 287.7(a), (d). Santos' detention lasted much longer than forty-eight hours after his sister initially posted bond on April 1, 2017, meaning that, under the facts alleged in the amended complaint, the Court cannot find that qualified immunity protects the Lake County Defendants.

**IV.    Sufficiency of the Allegations**

Finally, the Lake County Defendants challenge the sufficiency of Santos' factual allegations, arguing that he has failed to adequately plead his wrongful detention and retaliation claims. The Court addresses each of their arguments in turn.

**A.    *Monell* Claim**

First, Curran contends that Santos cannot proceed against him in his official capacity because Santos has not adequately alleged a policy or practice claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Curran, in his official capacity as the Sheriff of Lake County responsible for all detentions at the Lake County Jail, cannot be held liable pursuant to a theory of *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). But liability under *Monell* may be premised on (1) an express policy that, when enforced, causes a constitutional

10

violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). To adequately allege a *Monell* policy or practice claim, Santos must "plead [ ] factual content that allows the Court to draw the reasonable inference that the [Sheriff's Office] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted) (internal quotation marks omitted).

Curran complains that Santos uses only boilerplate language and refers only to a single problem he personally experienced, which cannot give rise to a claim for a widespread practice. But recently, the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). A plaintiff may rely solely on his own experience to state a *Monell* claim, rather than pleading examples of other individual's experiences. *See id.* at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). Therefore, Santos' allegation that he was unconstitutionally detained pursuant to a policy or practice of indefinitely detaining individuals pursuant to ICE immigration detainers, which the Sheriff enforced, suffices at this

11

stage to state a *Monell* claim against Curran in his official capacity. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, single incident cannot establish *Monell* claim, but at the motion to dismiss stage, a plaintiff "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists"). Additionally, Santos has pleaded that Curran developed and implemented the detention policies and practices at the Lake County Jail, which would include the alleged unconstitutional policy of detaining individuals indefinitely pursuant to an ICE detainer. Because "Illinois sheriffs have final policymaking authority over jail operations," *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976 (7th Cir. 2000), Santos has also sufficiently pleaded a claim pursuant to the third theory of *Monell* liability, *see Barwicks*, 2016 WL 3418570, at *4 (plaintiff satisfied *Monell* by pleading that Sheriff Dart was responsible for setting all policies and procedures for the correctional staff and the operation of the correctional facilities). The Court therefore allows Santos' claim against Curran in his official capacity to proceed.

### B. Personal Involvement of the Lake County Defendants

Next, the Lake County Defendants argue that Santos' individual claims fail because he has not adequately alleged that they were personally responsible for his unlawful detention or transfer to ICE custody. § 1983 creates a cause of action based on personal liability and predicated upon fault, meaning that "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The Lake

County Defendants argue that Santos has merely alleged that Jane Doe was confused about the bail procedures, which amounts to mere negligence and does not meet the required standard. *See Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) ("This is a mental state requirement and requires plaintiffs to prove more than mere negligence."). The Court agrees that the allegations against Jane Doe with respect to retaliation cannot stand, where the allegations do not plausibly suggest her involvement in any retaliatory activities. But the Court will allow the claim to proceed at this stage against Jane Doe with respect to the wrongful detention claim, where the Court cannot conclude from the allegations of the amended complaint that she was only "confused about the bail procedures in light of the ICE warrant," as the Lake County Defendants ask the Court to find. Doc. 12 at 13. Such a determination requires fact-finding, which is inappropriate at the motion to dismiss stage. Additionally, the Court finds that Santos has adequately alleged both Witherspoon's and Curran's personal involvement with respect to both claims. Although his allegations are somewhat conclusory, the Court does not apply a heightened pleading standard to § 1983 claims, *see Harper v. Wexford Health Sources Inc.*, No. 14-CV-04879, 2017 WL 2672299, at *2 (N.D. Ill. June 21, 2017), and finds Santos has sufficiently alleged that they directed other Lake County Jail officials to detain him without legal authority and transfer him to ICE custody in retaliation for the filing of this complaint.

### C. Retaliation Claim

Finally, the Lake County Defendants argue that Santos' retaliation claim fails because his allegations are consistent with lawful actions. They contend that speaking with ICE officials about Santos and the habeas petition does not amount to retaliatory conduct. But this is not the only allegation supporting the retaliation claim. Instead, looking at the entirety of the complaint, in which Santos alleges that he was held at the Lake County Jail for eleven days without the

Lake County Defendants taking any action on the ICE detainer and that they only did so after learning Santos filed a habeas petition, coupled with the comment from one of the ICE officers that despite his filing of a lawsuit that "they 'got him' anyway," Doc. 6 ¶ 36, suggests a retaliatory motive, even if their contact with ICE was legitimate.  *See Gomez*, 680 F.3d at 866–67 (finding plaintiff's filed grievance to be a motivating factor in transfer where "[n]o other explanation for Gomez's transfer is available at this early stage in the proceedings"); *Doe v. Johnson*, No. 15-cv-01387, 2016 WL 861240, at *3 (N.D. Ill. Mar. 7, 2016) (plaintiff sufficiently stated retaliation claim where he alleged that after waiting 278 days for action on his immigration petition, officials denied it after he filed a lawsuit).  Therefore, the Court will allow Santos to proceed on this claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Lake County Defendants' motion to dismiss [11].  The Court dismisses the First Amendment retaliation claim against Defendant Jane Doe without prejudice.  The Lake County Defendants are ordered to answer the remaining allegations of the amended complaint by March 2, 2018.

Dated: February 14, 2018

                                                                          _____
                                                                          SARA L. ELLIS
                                                                          United States District Judge